152 So. 610

## PARKER v. STATE.
### 4 Div. 42.

Court of Appeals of Alabama.
Jan. 30, 1934.

Sollie & Sollie, of Ozark, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This prosecution, by indictment, was for a violation of section 5490 of the Code of Alabama 1923, wherein it is made an offense (felony) for any man, by means of temptation, deception, arts, flattery, or promise of marriage to seduce an unmarried woman in this state. This section of the Code, however, provides: "But no indictment or conviction shall be had * * * on the uncorroborated testimony of the woman upon whom the seduction is charged"; and also, that "no conviction shall be had if on the trial it is proved that such woman was, at the time of alleged offense, unchaste."

From a judgment of conviction this appeal was taken.

██ We cannot sustain appellant's insistence as to error in the court allowing the father of the alleged injured party to remain in the courtroom and to occupy a seat near the solicitor during her examination as a witness. We must indulge the presumption, in the absence of affirmative and conclusive proof to the contrary, that there was no abuse of the trial court's discretion in this connection. The same is true relative to the court's action in allowing the solicitor to propound leading questions to the principal state witness. It was evident to the court that she was an unwilling witness, hence the court was well within the range of his discretion. Questions of this character are purely within the discretion of the trial court and, as stated, unless it clearly appears that an abuse of this discretion was indulged, the court's action will be sustained.

██ Lois Stephens, the woman in question, testified that she was unmarried. That at the time of the trial on February 28, 1933, she had known defendant about two years. That she first met him after Christmas in the year 1930, and that some weeks thereafter she had sexual intercourse with him for the first time. The testimony tends to show that the act of intercourse, here complained of, occurred either upon the first or second time the principals, that is to say,

this appellant and the alleged injured party, went together.

In this case the state insisted that there was a promise of marriage and as a result thereof the alleged seduction was accomplished. This was the question mainly controverted. In order to sustain this insistence, the state undertook to prove, by the alleged injured party, facts sufficient to make out the offense. To justify defendant's conviction on this ground, it was incumbent upon the state to offer evidence sufficient to satisfy the jury beyond a reasonable doubt, not only that there was a marriage engagement between the defendant and the prosecuting witness, and that in consequence of such engagement she surrendered her person to him sexually. In the case of Cooper v. State, 90 Ala. 641, 8 So. 821, Chief Justice Stone, for the court, said: "Promise of marriage, and subsequent illicit cohabitation, are not necessarily sufficient to make out the offense. They must stand to each other as cause and effect,—that is, the one must be the exciting or producing cause of the other,—or this statutory crime is not committed."

On the attempted proof to sustain this material allegation of a promise of marriage, the testimony of the prosecuting witness was vague and uncertain. Notwithstanding repeated efforts of the solicitor to adduce this necessary proof, at no time did she testify directly to the effect that defendant had promised to marry her. In one instance she testified in response to the solicitor's question, to wit: "Well, during the time he went with you before he had anything to do with you did he make any promises to you?" At first the witness did not answer; the solicitor again inquired: "Did he, Miss Stephens?" She answered: "Well, he didn't make any definite promise." Later on, this witness did testify to such statements: "Well, we talked of marrying." In response to the question: "What did he say about marrying?" she replied "He said we would marry." Whether the foregoing is, as a matter of law, sufficient to go to the jury as and for "a promise of marriage," we need not decide, as this case must be reversed upon several grounds of manifestly prejudicial error.

██ This is not a bastardy case, but it appears from the record that the trial, or a major portion thereof, was tried as if it were. There is a marked distinction between seduction and bastardy, and the issues are very different. The paternity of a child is immaterial in a prosecution for seduction unless the child in question is the fruit of the seduction; and then, only for the purpose of corroborating the prosecutrix as to the time of the seduction and as to the fact that she has had sexual intercourse. Maske

v. State, 19 Ala. App. 75, 95 So. 204, and cases cited.

On the trial below prosecutrix testified that she was an unmarried woman, and the first question propounded to her by the solicitor was: "Are you the mother of a child?" She was also asked: "Your best judgment is that he (defendant) is the father of your child?" and other questions of like import. Over numerous and well stated objections, the court permitted the witness to answer, "Yes sir." It affirmatively appears from the testimony that the offense of seduction here, if committed at all, was within the "first few weeks" after Christmas of 1930. The undisputed evidence shows that the child in question was born June 28, 1932, and could not, therefore, be "the fruit of the seduction." It follows the court erred in these several rulings, all of which were in direct conflict with innumerable decisions of the appellate courts of this state. Davis v. State, 18 Ala. App. 483, 93 So. 269; Dill v. State, 18 Ala. App. 187, 89 So. 866; Herbert v. State, 201 Ala. 480, 78 So. 386; Pope v. State, 137 Ala. 56, 34 So. 840; Owens v State, 19 Ala. App. 621, 99 So. 774; Maske v. State, 19 Ala. App. 75, 95 So. 204. In connection with the foregoing rulings, the trial court stated: "I think you can show that for the purpose of showing when the relations between the two began." As we see it, these subsequent acts tended in no way to shed light on any material issue in this case, and certainly had no tendency of "showing when the relations between the two began."

In line with the foregoing, it was error to allow prosecutrix to testify as to frequent acts of sexual intercourse between her and the accused subsequent to her alleged seduction by him. In Herbert v. State, supra, the court said: It is "the settled law of this state that such subsequent acts cannot, in the face of apt objection, be proved against the defendant in a seduction case." See, also, Pope v. State, supra.

These numerous erroneous rulings of the trial court necessitate a reversal of the judgment of conviction from which this appeal was taken. Numerous other questions were raised in the lower court and are here insisted upon. Several of these rulings appear to be of doubtful propriety and are probably erroneous, but a discussion is not necessary in this connection as the points of decision involved will not probably arise upon another trial.

For the errors indicated, the cause is reversed and remanded.

Reversed and remanded.